## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Cause No.: 4:24-CV-88 |
| vs. | ) ) | |
| STRATEGIC PROPERTIES, LLC, NEPHRITE FUND I, LLC, JESSE DAVILA, and ELENA PUGA and NICOLE EDWARDS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty"), by and through counsel, pursuant to 28 U.S.C. § 2201, and for its Complaint for Declaratory Judgment, states as follows:

### PARTIES

1.     Plaintiff Atlantic Casualty is and was at all material times an insurance corporation organized under the laws of the State of North Carolina with its principal place of business in North Carolina.

2.     Defendant Strategic Properties, LLC ("Strategic Properties") is a limited liability company whose members, upon information and belief, are Tomas Sinisterra and Daniel Jaramillo, both citizens of the State of Florida.

3.     Defendant Nephrite Fund I, LLC ("Nephrite Fund") is a limited liability company whose members, upon information and belief, are citizens of the State of Missouri.

4.     Defendant Jesse Davila is an individual and a citizen of the State of Missouri.

5.     Defendants Elena Puga and Nicole Edwards are individuals and citizens of the State of Missouri.

6.     The Putative Class represented by Defendants Puga and Edwards is defined as "Missouri residents who had a lease with or rented an apartment unit at Suncrest Apartments (formerly known as Amber Glen Apartments) between June 17, 2016 and the present" and as such, is comprised of individuals who are citizens of the State of Missouri.

## JURISDICTION & VENUE

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, and pursuant to 28 U.S.C. § 1332 because Plaintiff is not a resident of this State, there is complete diversity of citizenship between Plaintiff and Defendants, and because the amount in controversy exceeds $75,000, exclusive of interests and costs, as alleged in paragraphs 32 and 34, *infra*.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this suit occurred in this district.

## THE UNDERLYING LAWSUIT

9.     On June 17, 2021, Puga, on behalf of herself and all others similarly situated, filed suit in the Circuit Court of Jackson County, Missouri against Strategic Properties, Nephrite, and Davila (collectively, "the Underlying Defendants") alleging breach of the implied warranty of habitability and violations of the Missouri Merchandising Practices Act ("MMPA") in connection with the defendants' ownership and management of rental properties at the Suncrest Apartments (formerly known as the Amber Glen Apartments) in Raytown, Missouri.

10.     The Petition has been amended several times. The Second Amended Class Petition, which added the allegations of negligence contained in Count I, discussed *infra*, was

entered by the Circuit Court on December 12, 2022. The most recent Petition, the Third Amended Petition, was entered by the Circuit Court on August 15, 2023. A copy of the Third Amended Petition is attached hereto as *Exhibit A*.

11.     The Third Amended Class Petition, brought by Class Representatives Puga and Edwards on behalf of the Class, defined by Court order dated February 10, 2023 as "Missouri residents who had a lease with or rented an apartment unit at Suncrest Apartments (formerly known as Amber Glen Apartments) between June 17, 2016 and the present, " (collectively, "the Underlying Plaintiffs"), alleges common law negligence, breach of the implied warranty of habitability, and violations of the MMPA against the Underlying Defendants in relation to their ownership and management of the Suncrest Apartments.

12.     The Third Amended Class Petition alleges Puga was a resident at Suncrest Apartments since 2014 to the present.

13.     The Third Amended Class Petition alleges Edwards is and was a resident at Suncrest Apartments from January 29, 2021 to August 2022.

14.     The Third Amended Class Petition alleges Nephrite is the owner of Suncrest Apartments pursuant to a deed of trust dated September 14, 2014.

15.     The Third Amended Class Petition alleges Davila is the manager and a member of Nephrite.

16.     The Third Amended Class Petition alleges Strategic Properties is and was the property manager for Suncrest Apartments since 2018.

17.     The Third Amended Class Petition alleges the tenants at Suncrest Apartments have suffered uninhabitable and substandard housing conditions within their unites including, but not limited to, roaches, bugs, filth, vermin, water intrusion, flooding, mold, broken smoke

alarms, bad odors, dirty carpets, inadequate plumbing, collapsed ceilings, inadequate air conditioning and heating, lack of hot water, violence, lack of security, faulty wiring, fires, failing appliances, unsecured doors and windows, exposed trash, lack of a fire extinguisher, uncovered vents, missing baseboards, ineffective maintenance, inadequate repairs, and dangerous conditions in the common areas.

18.     The Third Amended Class Petition alleges the Underlying Plaintiffs and the Underlying Defendants have a contractual landlord-tenant relationship, and a reasonable renter would expect the property to be fit for human habitation.

19.     The Third Amended Class Petition alleges the Underlying Plaintiffs have complained to the Underlying Defendants about the safe and unsanitary conditions, but they have failed to or refused to fix these conditions promptly and instead continued to collect and receive the full amount of rent.

20.     Count I of the Third Amended Class Petition alleges the Underlying Defendants failed to exercise their duty of reasonable care to the Underlying Plaintiffs by failing to fix the conditions complained of and by failing to provide safe, sanitary and decent apartments, and as a result, the Underlying Defendants were negligent.

21.     Count I of the Third Amended Class Petition alleges the negligence of the Underlying Defendants proximately caused injuries to the Underlying Plaintiffs in the form of:

> 113.   …loss of money and property. [*sic*] including:  humiliation and anguish because of living in substandard and unsafe conditions, stress, anxiety, depression, emotional distress, loss of sleep, worsening of health, paying rent while the premises were and are substandard, payment of a security deposit, loss of full use of their moving costs, eviction, credit harm, and unnecessary out-of-pocket costs.

22.     Count II of the Third Amended Class Petition alleges the Underlying Plaintiffs' leases contained an implied warranty of habitability that the Underlying Defendants "shall

maintain the premises in a safe, sanitary, and habitable condition, and in compliance with state and local laws."

23.     Count III of the Third Amended Class Petition alleges:

119.     Defendants Nephrite, Davila, and SP [Strategic Properties] breached their duty to deliver and maintain the premises to Plaintiffs in a safe, sanitary, and habitable condition by:

a.     Plaintiffs notified Defendants Nephrite, Davila, and SP of the unsafe, unsanitary, or otherwise uninhabitable conditions of the unit at the Suncrest Apartments;

b.     Defendants Nephrite, Davila, and SP promised to make repairs but took no meaningful action to quickly, competently, and effectively make the necessary repairs; and

c.     Defendants Nephrite, Davila, and SP failed to remediate the condition.

24.     Count II of the Third Amended Class Petition alleges the uninhabitable conditions of the units at Suncrest Apartments amounted to a breach of the implied warranty of habitability and the Underlying Plaintiffs' leases, and as such, the value of the Underlying Plaintiffs' units was zero dollars ($0.00) per month and their obligation to pay full and total rent under the terms of the leases is and was suspended.

25.     Count II of the Third Amended Class Petition "seeks compensation for the rent paid during the period the home was uninhabitable."

26.     Count III of the Third Amended Class Petition alleges the Underlying Defendants' rental charges and failure to provide suitable living conditions were deceptions and unfair practices as defined by the MMPA.

27.     Count III of the Third Amended Class Petition alleges:

143.     Defendants Nephrite, Davila, and SP used deception, committed an unfair practice, and concealed, suppressed, and omitted material facts in connection wit the leases by engaging in the following:

a. Plaintiffs notified Defendants Nephrite, Davila, and SP of the unsafe, unsanitary, or otherwise uninhabitable conditions of the unit at the Suncrest Apartments;

b. Defendants Nephrite, Davila, and SP promised to make repairs but took no meaningful action to quickly, competently, and effectively make the necessary repairs; and

c. Defendants Nephrite, Davila, and SP failed to remediate the condition.

146. The above-stated actions constitute acts and practices leading to misrepresentations, concealment, false promises, fraud, omissions, deceptions, and unfair practices of and concerning material facts in violation of RSMo. § 407.020.

147. Defendant Nephrite, Davila, and SP's actions constitute a pattern and practice of deceptive conduct.

148. Defendant Nephrite, Davila, and SP's actions constitute violations of the MMPA.

28. Count III of the Third Amended Class Petition alleges damages as a result of the Underlying Defendants violations of the MMPA in the form of the Underlying Plaintiffs' inability to benefit from the full use and enjoyment of their homes; the loss of money and property including: humiliation and anguish because of living in substandard and unsafe conditions, stress, anxiety, depression, emotional distress, loss of sleep, worsening of health, paying rent while the premise were and are substandard, security deposit, moving costs, and unnecessary out-of-pocket expenses.

29. Count III of the Third Amended Class Petition alleges:

156. Defendants' conduct described above was malicious, intentional, reckless, corrupt, predatory, and sufficiently in disregard of plaintiffs' rights to support an away of punitive damages against defendants.

30.     On December 22, 2021, Atlantic Casualty issued a Declination of Coverage to Strategic Properties based on the allegations in the original Petition. Atlantic Casualty did not receive any additional notice regarding the Underlying Lawsuit until its receipt of the Third Amended Class Petition, sent by correspondence from counsel for Strategic Properties dated October 10, 2023. Trial in the Underlying Lawsuit was set to begin on October 30, 2023.

31.     Strategic Properties and the other parties to the Underlying Lawsuit engaged in mediation on October 17, 2023. Atlantic Casualty was not given notice of the mediation until the day before, October 16, 2023, and as such, did not have adequate time to review and attend. According to a Motion to Enforce Settlement filed by the Underlying Plaintiffs on October 27, 2023, the parties to the Underlying Lawsuit reached a settlement in principle on the morning of October 26, 2023.

32.     According to the aforementioned Motion to Enforce Settlement, the parties to the Underlying Lawsuit agreed the Underlying Defendants would make a lump sum payment to the Underlying Plaintiffs in the amount of $600,000, to a cessation of all collection and eviction actions against any tenant from 2016 through the resolution of the Underlying Lawsuit, dismissal of all rent and possession cases filed within three (3) years of the date of the settlement, a rent reduction in the amount of $150 to all tenants for three (3) months, no rent increases until the sale of the property, the entry of a Stipulated Judgment against the Underlying Defendants on Count II of the Third Amended Class Petition (Breach of the Implied Warrant of Habitability) in the amount of $4,000,000.00, and the Underlying Defendants' cooperation in the Underlying Plaintiffs' pursuant of actions against the Underlying Defendants' insurance carriers pursuant to RSMo. § 537.065.

33.     According to the aforementioned Motion to Enforce Settlement, Strategic Properties refused to sign the proposed settlement agreement after a dispute arose regarding the allocation of the proceeds of the sale of Suncrest Apartments on the afternoon of October 26, 2023, prompting the filing of the Motion to Enforce Settlement.

34.     On the morning of October 27, 2023, the Underlying Defendants removed the Underlying Lawsuit to federal court, alleging an amount in controversy in excess of $5,000,000.00 and partial diversity of citizenship pursuant to 23 U.S.C. § 1332(d)(2).

**THE INSURANCE POLICY**

35.     Atlantic Casualty issued policy number L32400002-0 to named insured Strategic Properties, LLC with effective dates of March 19, 2019 to March 19, 2020. A copy of said policy (premium information redacted) is attached hereto as *Exhibit B*.

36.     Atlantic Casualty issued policy number L32400002-1 to named insured Strategic Properties, LLC with effective dates of March 19, 2020 to March 19, 2021. A copy of said policy (premium information redacted) is attached hereto as *Exhibit C*.

37.     Atlantic Casualty issued policy number L324000034-2 to named insured Strategic Properties, LLC with effective dates of March 19, 2021 to March 19, 2022. A copy of said policy (premium information redacted) is attached hereto as *Exhibit D*.

38.     Exhibits B-D (collectively, "the Policies") are identical except as otherwise noted.

39.     SECTION I - COVERAGE A of the Policies applies to liability for covered "bodily injury" and "property damage", as defined by Section V., Paragraphs 3 and 17 of the Policies, respectively.

40.     SECTION I – COVERAGE A, Paragraph 1 of the Policies provides, in part:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

### 1. Insuring Agreement

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

        **(2)** Our right and duty to defend ends when we have used up the applicable limits of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverage **A** and **B**.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

*     *     *

41.    SECTION I – COVERAGE A, Paragraph 1 of the Policies is amended by endorsement AGL-077 10-16 as follows:

<b>INSURING AGREEMENT AMENDMENT – USE OF EXTRINSIC<br>EVIDENCE – RIGHT TO DEFEND</b>

    **A.**    Paragraph **1. a.** of **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE** is replaced by the following:

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and the duty to defend the insured against any "suit" seeking covered damages. We will have the right, but not the duty, to defend any insured against any "suit" for which we dispute coverage. We will have no duty to defend or indemnify any insured against any "suit" seeking damages for "bodily injury" or "property damage" where there is no coverage under the policy. We will have the right, but not the duty, to defend those qualifying

as an additional insured by way of an additional insured endorsement.

We may look to extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against a lawsuit seeking "bodily injury" or "property damage," provided that extrinsic evidence does not contradict a claimant's pleaded allegation. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend a claim to which this insurance applies ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **COVERAGES A** or **B** or medical expenses under **COVERAGE C**.

Paragraphs **b. (3), c.** and **d.** under Paragraph **1. Insuring Agreement** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERY DAMAGE LIABILITY** are deleted.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A and B.**

42.     SECTION I – COVERAGE A of the Policies includes the following exclusions:

**2. Exclusions**
This insurance does not apply to:

\*        \*        \*

**j.  Damage to Property**
"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

\*        \*        \*

**m. Damage to Impaired Property or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

\*        \*        \*

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

43.     SECTION I - COVERAGE B of the Policies applies to liability for covered "personal and advertising injury", as defined by Section V., Paragraph 14 of the Policies.

44.     SECTION I – COVERAGE B, Paragraph 1 of the Policies provides, in part:

**COVERAGE B PERSONAL AND ADVERTISING INJURY**
**1.  Insuring Agreement**
   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:
      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgements or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
   **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

*          *          *

45.     SECTION I – COVERAGE B, Paragraph 1 of the Policies is amended by endorsement AGL-077 10-16 as follows:

**INSURING AGREEMENT AMENDMENT – USE OF EXTRINSIC EVIDENCE – RIGHT TO DEFEND**

*          *          *

**B.**     Paragraph **1. a.** of **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY** is replaced by the following:
   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right, but not the duty, to defend any insured against any "suit" seeking covered damages. We will have no duty to defend or indemnify any insured against any

"suit" seeking damages for "personal and advertising injury" where there is no coverage under the policy. We will have the right, but not the duty, to defend those qualifying as an additional insured by way of an additional insured endorsement.

We may look to extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against a lawsuit seeking "personal and advertising injury," provided that extrinsic evidence does not contradict a claimant's pleaded allegation and provided that evidence relates to a discrete coverage issue under the policy and not a merits or liability issue. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend a claim to which this insurance applies ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **COVERAGES A** or **B** or medical expenses under **COVERAGE C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A** and **B**.

42.     SECTION I – COVERAGE B of the Policies includes the following exclusions:

**2. Exclusions**
This insurance does not apply to:
**a. Knowing Violation Of Rights Of Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violation the rights of another and would inflict "personal and advertising injury".

*       *       *

**g. Quality Or Performance of Goods – Failure to Confirm to Statements**
"Personal and advertising injury" arising out of the failure of goods, products, or services to confirm with any statement of quality or performance made in your "advertisement".

*       *       *

43.     SECTION IV – COMMERCIAL GENERAL LIABILTY CONDITIONS of the

Policies reads, in part:

**2. Duties In The Event of Occurrence, Offense, Claim Or Suit**

  **b.** If a claim is made or "suit" is brough against any insured, you must:
    (**1**) Immediate record the specifics of the claim or "suit" and the date received; and
    (**2**) Notify us as soon as practicable.
    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
  **c.** You and any other involved insured must:
    (**1**) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\*      \*      \*

**4. Other Insurance**
If other valid and collectible insurance is available to the insured for a loss We cover under Coverages **A** and **B** of this Coverage Part, our obligations are limited as follows:

\*      \*      \*

  **b. Excess Insurance**

\*      \*      \*

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

\*      \*      \*

44.    SECTION V of the Policies contain the following Definitions:

**SECTION V – DEFINITIONS**
**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
  **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and
  **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purpose of attracting customers or supports is considered an advertisement.

\*      \*      \*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous ; or

   **b.** You have failed to fulfill the terms of a contract or agreement if such property can be restored to use by:

   **c.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **d.** Your fulfilling the terms of the contract or agreement.

\* \* \*

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\* \* \*

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

\* \* \*

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

\* \* \*

**21.** "Your product::

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)** You;

       **(b)** Other trading under your name; or

       **(c)** A person or organization whose business or assets you have acquired; and

     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Case 4:24-cv-00088-LMC   Document 1   Filed 02/05/24   Page 14 of 21

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product" and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"  and

    **(2)** The providing of or failure to provide warnings or instructions.

45. The Policies contain the following exclusion by Endorsement AGL-003 3-13:

## EXCLUSION – PUNITIVE DAMAGES

This insurance does not apply to any claim of or indemnification for punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages. If a "suit" seeking both compensatory and punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interest or damages attributable to punitive, exemplary and/or statutorily enhanced damages, including, but not limited to, multiple damages.

46. The Policies contain the following exclusion by Endorsement AGL-036 1/06:

## EXCLUSION - ANIMALS OR INSECTS

We do not cover any claim, loss, costs or expense for "bodily injury," "property damage" or "personal and advertising injury" arising from any animal or insect, or damage or injury to any animal or insect.

47. The Policies attached as Exhibit B and C contain the following exclusion by

Endorsement AGL-054 3/13:

## EXCLUSION – MOLD, BACTERIA, VIRUS AND ORGANIC PATHOGEN LIABILITY

This insurance does not apply to any claim, loss, costs or expense arising from any actual or alleged:

**(1)** "bodily injury," "property damage" or "personal and advertising injury;"

**(2)** damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space; or

**(3)** fines, penalties and attorney fees, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens;" or

**(4)** litigation or administration procedure in which any insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape of "organic pathogens," whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any alleged "bodily injury," "property damage," "personal and advertising injury," loss, costs or expense including but not limited to fines, penalties and attorney fees, arising out of or related to any form of "organic pathogens," whether or not such actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any insured is alleged to be direct or vicarious. This exclusion also applies whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of any insured.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, biogenic aerosol or scent.

48. The Policy attached as Exhibit D contains the following exclusion by Endorsement AGL-054 12-18:

**EXCLUSION – MOLD, BACTERIA, VIRUS AND ORGANIC PATHOGEN LIABILITY**

This insurance does not apply to any claim, loss, costs or expense arising from any actual or alleged:

**1.** "bodily injury," "property damage" or "personal and advertising injury;"

**2.** damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space; or

**3.** fines, penalties and attorney fees, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens;" or

**4.** litigation or administration procedure in which any insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape of "organic pathogens," whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any alleged "bodily injury," "property damage," "personal and advertising injury," loss, costs or expense including but not limited to fines, penalties and attorney fees, arising out of or related to any form of "organic pathogens," whether or not such actual, alleged or threatened existence, exposure to, discharge, dispersal, deposit, release or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any insured is alleged to be direct or vicarious. This exclusion also applies whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of any insured.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, biogenic aerosol or scent.

49.     The Policies contain the following exclusion by Endorsement AGL-131 3/13:

## EXCLUSION - CLAIMS IN PROCESS

\*        \*        \*

The following exclusion is added to **2. Exclusions** under **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:
1.  Any loss or claim for damages arising out of or related to "personal and advertising injury," whether known or unknown:
    a.  which first occurred prior to the inception date of this policy; or
    b.  which is, or is alleged to be, in the process of occurring as of the inception date of this policy[1].
2.  Any loss or claim for damages arising out of or related to "personal and advertising injury," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.

We shall have no duty to defend or indemnify any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "personal

---

[1] Policy No. L324000034-2 contains the additional language after the word "policy" of "regardless whether such bodily injury or property damage continues or becomes progressively worse during the policy period."

and advertising injury," unless any insured can demonstrate this endorsement does not apply.

50.     The Policies contain the following exclusion by Endorsement AGL CG2270 11/85:

### REAL ESTATE PROPERTY MANAGED

This insurance does not apply to "property damage" to property you operate or manage or as to which you act as agent for the collection of rents or in any other supervisory capacity.

With respect to your liability arising out of your management of property for which you are acting as a real estate manager this insurance is excess over any other valid and collectible insurance available to you.

51.     The Policies contain the following exclusion by Endorsement AGL-073 3-13:

### EXCLUSION – MENTAL INJURY

This insurance does not apply to any claim, loss, costs or expenses arising out of emotional distress, mental anguish, humiliation, mental distress, mental injury, mental suffering, worry, annoyance, anxiety, inconvenience, depression, dissatisfaction, or shock to the nervous system or any physical manifestation of any of the foregoing, or any similar injury unless it arises out of a physical injury that occurs to that person.

52.     The Policies are amended by Endorsement AGL2116 07/98 as follows:

### EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

| Description of Professional Services: |
| --- |
| **1.** Any and all professional exposures[2] |
| **2.** |
| **3.** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

---

[2] Policy No. L324000034-2 lists "Property Management" instead of "Any and all professional exposures"

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

53.     The Policies are amended by Endorsement AGL-064 03-13 as follows:

**EXCLUSION – TOTAL POLLUTION**

\*      \*      \*

Exclusion **f.** under Paragraph **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

This insurance does not apply to:
**f. Pollution**
   **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, deposit, seepage, migration, release or escape of "pollutants" at any time.
   **(2)** Any loss, cost or expense arising out of any:
      **(a)** Request, demand, order or statutory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants;" or
      **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying, or neutralizing or in any way responding to, or assessing the effects of "pollutants."

\*      \*      \*

54.     In accordance with the Policy provisions quoted above, the Atlantic Casualty Policies do not cover the claims asserted against Strategic Properties in the Third Amended Class Petition.

55.     Nevertheless, upon information and belief based on allegations contained in the Underlying Plaintiffs' Motion to Enforce Settlement, the Underlying Plaintiffs intend to seek

recovery from Atlantic Casualty for damages entered against Strategic Properties pursuant to a Stipulated Judgment as alleged in paragraph 32 of this Complaint.

56.     In accordance with the foregoing Policy terms and exclusions, Atlantic Casualty is not obligated to defend Strategic Properties or anyone else in the litigation filed by the Underlying Plaintiffs, nor is it required to indemnify Strategic Properties of anyone else for the Underlying Plaintiffs' claims made in the Underlying Lawsuit because the Policies attached as Exhibits B-D do not cover the claims asserted in the Third Amended Class Petition, attached hereto as Exhibit A.

55.     Atlantic Casualty is further not obligated to defend or indemnify Strategic Properties or anyone else against the claims made in the Underlying Lawsuit because it has been prejudiced by Strategic Properties failure to give proper notice of the claims made in the Third Amended Class Petition and the proposed settlement.

56.     Atlantic Casualty brings this declaratory judgment action pursuant to 28 U.S.C. § 2201 and states that there is an actual, justiciable controversy between Atlantic Casualty and the defendants named and asks that this Court declare the rights and obligations of the parties with respect to the insurance policies attached as Exhibits B-D and with respect to the Petition attached as Exhibit A as alleged herein.

### PRAYER FOR RELIEF

Plaintiff Atlantic Casualty prays that defendants be cited to appear and answer and, upon final trial, Atlantic Casualty be granted judgment as follows:

A.     A declaration that the policies of insurance issued by Atlantic Casualty, as alleged, provide no coverage for and no duty on behalf of Atlantic Casualty to provide a defense to or to indemnify Strategic Property, or anyone else, for the claims asserted in the lawsuit styled

*Elena Puga and Nicole Edwards, on behalf of themselves and all others similarly situated vs. Nephrite Fund I, LLC, Jesse Davila, and Strategic Properties, LLC*, filed in the Circuit Court of Jackson County, Missouri under cause number 2116-CV13008 and removed to the U.S. District Court for the Western District of Missouri under cause number 4:23-CV-00774-DGK.

B.     A declaration that Atlantic Casualty shall have no duty or obligation to pay on behalf of Strategic Properties or anyone else any sum that Strategic Properties or anyone else may become obligated to pay by way of settlement or judgment in connection with the matter styled *Elena Puga and Nicole Edwards, on behalf of themselves and all others similarly situated vs. Nephrite Fund I, LLC, Jesse Davila, and Strategic Properties, LLC*, filed in the Circuit Court of Jackson County, Missouri under cause number 2116-CV13008 and removed to the U.S. District Court for the Western District of Missouri under cause number 4:23-CV-00774-DGK.

C.     Plaintiff prays for trial by jury on all issues so triable.

Respectfully submitted,

GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, P.C.

  */s/Jennifer L. Woulfe*
Stephen J. Moore, #58100MO
Jennifer L. Woulfe, #64252MO
222 S. Central Avenue, Suite 1110
St. Louis, Missouri 63105
Telephone: (314) 725-0525
Facsimile: (314) 725-7150
smoore@gallowaylawfirm.com
jwoulfe@gallowaylawfirm.com
*Attorneys for Atlantic Casualty Insurance Company*